CITY OF FAYETTEVILLE *v.*
FAYETTEVILLE SUBURBAN WATER DIST. No. 1.

5-3505                                         388 S. W. 2d 548

Opinion delivered April 5, 1965

260

*Bass Trumbo, Smith, Williams, Friday & Bowen,* by *Herschel H. Friday* and *John C. Echols,* for appellant.

*Dickson, Putman, Millwee & Davis,* for appellee.

JIM JOHNSON, Associate Justice. This suit involves a contract between a city and a suburban water district for construction and operation of a water distribution system and the improvement district bonds issued pursuant to the contract.

Appellant City of Fayetteville entered into a contract on April 10, 1950, with appellee Fayetteville Suburban Water District No. 1 of Washington County. The city was to build a water distribution system in the district, to be owned by the city, with construciton to start when the district put up the estimated $82,000 construcion costs. The district issued 86 improvement district bonds in the principal sum of $82,000, maturing over a period of twenty years. The water distribution system was constructed at an approximate cost of $58,000, and once in service, the city paid one-half of the revenue from users within the district back to the district, as provided in the contract, until March 1963. At that time the city, having acquired the outstanding bonds, refused to make further payment to the district of one half of the revenues collected from water users within the district. The district up to that time had paid a number of the bonds as they matured and called others before maturity, so that by September 2, 1959, only two bonds remained outstanding. Bond No. 55 for $500 was due September 1, 1964, and bond No. 86, also for $500, was due September 1, 1970. In 1962 the city purchased the two bonds for about $1,500. In May, 1963, the city attempted to cancel the bonds and "forgive" the indebtedness, for the pur-

pose of ending the city's liability under the contract to pay water revenues to the district. The district refused to accept the bonds or honor the cancellation, with the express intention of requiring the city to pay one-half of the water revenues under the contract until bond No. 86 matured in 1970 or was earlier called.

After the city stopped paying water revenues to the district, the district filed suit on November 27, 1963, in Washington Chancery Court for an accounting of the water revenues, to compel payment of water revenues due at the time suit was commenced and for a declaratory judgment that the city was obligated to continue paying revenues until 1970 or until earlier payment by the district of all its bonds.

In its decree of August 7, 1964, the chancery court ordered, *inter alia*, (1) the city to pay to the district one-half of the water revenues then unpaid but accounted for, (2) accounting and payment of revenues for the quarter ending June 30, 1964, and (3), payment of one-half of the revenues "for all calendar quarters beginning July 1, 1964, until all bonds issued by [the district] are paid or until September 1, 1970, whichever occurs first." The city has appealed from the decree and summarizes the issues on appeal as follows:

(1) whether any bonds of the district are "outstanding and unpaid" within the meaning of the contract;

(2) whether, because of the irregular call used by the district, the obligation of the city to share water revenues is at an end;

(3) the maximum limits of the city's liability under the contract.

Appellant's first contention is that there are no bonds outstanding because the city purchased the only two outstanding bonds, cancelled them and offered them back to the district, thus terminating the city's liability under the contract. Appellant has offered us naked legal negotiable instrument authority in support of its

action cancelling the bonds, but we are not persuaded it controls in this unique contract case. A court of equity, doing equity, could not sanction such a subterfuge by a party to a valid contract to the detriment of other contracting parties and in contravention of the express intention of the contract.

Appellant next contends that "the obligation of the city to share water revenues has terminated because no bonds of the district would be 'outstanding and unpaid' if the district had called its bonds for redemption prior to maturity in accordance with the terms of the contract between the district and its bondholders." In the pledge and on the face of each bond is the provision that any call prior to maturity would be in inverse numerical order. The last bond was No. 86. In 1951, the district called bonds numbered 71 through 85, leaving No. 86 outstanding. There was no objection from any of the then bondholders, and we find no basis on which the city, on becoming a bondholder eleven years later, can now object. There is provision in the contract (*infra*) for calling the bonds at the option of the district, but there is no contract provision for calling the bonds in inverse order. It is clear, therefore, such provision contained in the pledge and bonds here involved was solely for the benefit of the obligor district.

It would be informative here to quote one particularly pertinent paragraph of the contract sued on:

"It is understood between the parties hereto that the funds to be furnished by the District will be derived from the sale of suburban improvement district bonds in the principal sum of $82,000.00 and maturing over a period of twenty years and bearing interest at a rate not to exceed four per cent and that one-half of the revenues due to the District by the City shall be paid so long as any bonds are outstanding and unpaid or for a period of not longer than twenty years, whichever is sooner but the District shall not be obligated to call any bonds prior to maturity and may, if it so desires, refund to those persons entitled thereto, so much of their assess-

ments as the District shall elect out of any surplus revenues of said District, whether derived from unexpended construction funds, collections or assessments of benefits or revenues of said District."

The last matter for our consideration is the maximum limits of the city's liability under the contract. We made reference earlier to "the express intention of the contract." A four-corner perusal of the contract and the whole context of the agreement, particularly the paragraph quoted above, reveal patently that the contract contemplated reimbursement of the district's outlay, but certainly it was never intended for the district to make a profit. The city admits that the district will have paid $95,239.96 in discharging its final total obligation under the bond project. The city properly offered proof that it had paid the district $50,973.35 under the contract. This leaves $44,266.61 remaining yet to be paid. The construction costs totaled only $58,588.41, leaving an initial surplus of borrowed money of $23,411.59 ($82,-000.00 minus $58,588.41). Deducting this $23,411.59 from the unpaid $44,266.61 leaves a balance of $20,855.02 remaining to be paid to the district as final reimbursement of the district's outlay. Appellee suggests in argument that a number of expenses were incurred by the district through the years for which it should be reimbursed. To determine which of these expenditures were legitimately chargeable to the city would require a detailed accounting and, forseeably, extensive and prolonged litigation. On trial de novo it is our view that these expenses are a small price to pay for the benefits which have accrued to the district (such as the location of industry), made possible by the creation of the district. Applying the rule that "equity seeks justice rather than technicality, truth evasion, common sense rather than quibbling," the decree is modified and remanded for entry of a decree requiring the city to continue share revenues according to the contract until it has made the district whole by paying the remaining balance of $20,855.02.